In order to escape the liability assumed the defendant must show that the plaintiffs have been furnished with competent written legal evidence of their discharge from liability under said bond, or that he has been released from such liability by the plaintiffs, either expressly or by some act on their part. Plaintiffs have not been furnished with written legal evidence of their discharge from liability, in that it is admitted that, although defendant filed his account on January 16, 1911, the same has never been judicially settled and allowed, and it is not contended that the plaintiffs have expressly released defendant from any obligation under his agreement. It follows, then, that the defendant is liable for the premiums in question, unless he can show some act on the part of the plaintiffs inconsistent with the written agreement which can be construed as a waiver by the plaintiffs of their rights thereunder. The only affirmative act of the plaintiffs has been the proceeding under section 812 of the Code, which resulted in the removal of the defendant as administrator. That act is not only not inconsistent with the written contract, but is within its express provisions and must have been contemplated by the parties. It is expressly provided that the plaintiffs at any time shall have the right to be discharged from liability for the further default of the defendant and to require him to account. It may be a hardship upon the defendant to have to pay these renewal premiums, but his failure to have the account filed, judicially settled, and allowed is the cause of his distress. It is true that the plaintiffs might have initiated the necessary proceedings, but they were not required so to do.

Judgment for the plaintiffs for the amount claimed, with interest and costs. Settle findings on one day's notice. Defendant granted 10 days' stay of execution and 60 days to make a case after notice of entry of judgment.

---

### NATIONAL SURETY CO. et al. v. STALLO.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. PRINCIPAL AND SURETY ☞57—GUARANTY AND INDEMNITY INSURANCE—
   RISK—LIABILITY FOR PREMIUM.
   Plaintiff surety company became surety on defendant's guardianship bonds upon his agreement to pay an annual premium in advance until plaintiff should be furnished with competent legal evidence of its discharge from liability and thereafter on petition to the Surrogate's Court obtained an order, pursuant to Code Civ. Proc. § 812, directing defendant to file new bonds, and a further order that he deposit with a trust company all the securities belonging to the estates of his infant wards, and requiring him to file a new bond, which was duly filed, and later another order releasing plaintiff from further liability, after which the defendant's accounts as guardian were settled and he was discharged. *Held* that, as it had obtained its own discharge from liability, the requirement of evidence of its discharge did not apply, and hence that it was only entitled to 'the proportionate share of the premium payable for the first year from the date the bond was issued to the date when it obtained its discharge, with interest from the date of issue.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 101; Dec. Dig. ☞57.]

2. INSURANCE ☞151—GUARANTY AND INDEMNITY INSURANCE—APPLICATION
    —CONSTRUCTION.
        The application for a bond, made part of the agreement with the plain-
    tiff surety company, being printed and prepared by it, every favorable
    intendment should be given to the indemnified principal.
        [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 308–311; Dec.
    Dig. ☞151.]

Appeal from Trial Term, New York County.

Action by the National Surety Company and another against Ed-
mund K. Stallo. Judgment for plaintiffs in part, and for defendant
in part, and plaintiffs appeal. Affirmed.

The following is the opinion of Greenbaum, J., in the court below:

On or about the 24th day of June, 1910, plaintiffs became sureties upon
two several bonds duly approved by one of the surrogates of this county, each
in the penal sum of $450,000, given by the defendant for the faithful per-
formance of his duties as guardian of Laura McDonald Stallo and Helena
McDonald Stallo, infants. The defendant agreed to pay to the plaintiff a
premium of $862.50 upon each bond, and "the further sum of $575 annually
thereafter in advance until the plaintiffs should be furnished with compe-
tent legal evidence of their discharge from liability under said bonds." It
was established upon the trial that upon the petition of the plaintiffs to
the Surrogate's Court, praying to be relieved from any further liability upon
said bonds, an order was duly made upon December 23, 1910, pursuant to
section 812 of the Code of Civil Procedure, directing the defendant to file
new bonds to the satisfaction of the court. Thereafter such proceedings
were had that on or about the 24th day of February, 1911, upon the petition
of the plaintiffs, a further order was made by the Surrogate's Court that
the defendant as guardian deposit with the Equitable Trust Company of the
City of New York all of the securities belonging to the estates of said in-
fants, subject to the order of the defendant, to be countersigned by the
surrogate, and that defendant file a new bond to the satisfaction of the
surrogate in the sum of $15,000. On March 7, 1911, the securities were de-
posited in compliance with the order of the surrogate, pursuant to stipulation
of the parties and the approval of the court, and a new bond in the sum of
$15,000 was duly executed and approved by the court. On March 14, 1911,
upon the plaintiffs' motion, an order was duly made by and entered in the
Surrogate's Court releasing the plaintiffs from any further liability upon
said bonds. On December 1, 1911, on a judicial settlement of the accounts
of the defendant as general guardian of Laura McDonald Stallo an order was
entered in the Surrogate's Court judicially settling and allowing the accounts
of the defendant as guardian, decreeing that the defendant and the Equitable
Trust Company deliver to Laura McDonald Stallo, the sole beneficiary, the
shares of stock deposited with said trust company, and further decreeing
"that upon complying with the provisions of this decree the said Edmund K.
Stallo be discharged as general guardian of Laura McDonald Stallo and re-
lieved from all further responsibility thereunder, and from all liability to any
person interested thereunder as such general guardian as aforesaid and
as to all matters embraced in this action." On the 13th of February, 1912, a
similar order was entered in the Surrogate's Court with respect to the estate
of the infant Helena McDonald Stallo, excepting that in that case the assets
were to be turned over to the general guardian of the person and estate of
Helena McDonald Stallo to be appointed. Neither of said orders contained
any provisions in terms discharging the sureties from liability on their bonds.

[1] Upon the foregoing facts the plaintiffs seek to recover the initial pre-
mium, which it appears had not been paid by the defendant, and also the
annual premiums, which under the agreements were to become payable in
advance on June 24, 1911. These claims are asserted upon the ground that
prior to November 10, 1911, neither of the plaintiffs was furnished with any

evidence of its discharge from liability as sureties, as required by the agreements between the parties. The rights of the parties must depend upon the construction to be given to the agreements executed by them when the bonds under consideration were given. As already stated, the agreements provide that the company shall be "furnished with competent written legal evidence of its discharge from liability" under said bonds. Ordinarily these words would indicate a continuance of liability under the bonds up to such time as written legal evidence of its discharge therefrom is furnished. But in the case before us the plaintiffs, instead of continuing on the bonds until a final accounting, upon which a discharge from liability would arise, took advantage of the peculiar provisions of section 812 of the Code to be relieved from continuing on the bonds. If the construction that plaintiffs put upon the agreement prevail, then the surety would have the right within a day or two after the execution of the bond to ask to be relieved from continuing liability thereunder, and at the same time be entitled to payment of premiums until a formal discharge upon an accounting is had, nothwithstanding its release from further liability after a certain date, with the result that the principal would be put to the expense, not only of unnecessary premiums, but also to the added expense involved in a compulsory accounting. We may thus conceive of a series of sureties on successive bonds exacting premiums after release from liability under section 812 of the Code, thus forcing the payment of a number of premiums and incurring expense for enforced accountings.

[2] It should also be borne in mind that the application for the bonds, which is part of the agreement with the plaintiffs, is printed and prepared by the plaintiffs, and under such circumstances every favorable intendment should be given the principal. There is no mention in the agreement of the contingency of the surety exercising its right under the statute to withdraw from the bond. In other words, the surety was privileged to avail himself of the right to be relieved from continuing on the bonds, but the principal was compelled to pay premiums until the surety's discharge and service upon it of written evidence thereof. It seems to me that such a provision as is now being discussed was only intended to apply to the case where the surety continued on the bond, and not to one where it procures an order on its own initiative terminating its further liability thereunder, regardless of the consent or wish of the principal. This conclusion is fortified by the further consideration that ordinarily the sureties would have a right to assume that their liability continued under a bond until after the settlement of the accounts of the principal, and hence were entitled to the payment of premiums until they were furnished with evidence of their discharge. A premium is paid the surety as compensation for assuming a liability, but where the liability no longer exists there can be no reason for thinking that the parties contemplated a continuance of its payment. Besides, no necessity would exist for furnishing evidence of a surety's discharge from further liability when he himself procured the order relieving him from further liability. There seems to be no merit in plaintiffs' contention.

Plaintiffs cite National Surety Co. v. Stallo, 156 N. Y. Supp. 987 (affirmed by Appellate Term, without opinion), in support of their contention. That case is readily distinguishable from this, in that it does not appear that any order had been entered upon the plaintiffs' motion in that case releasing it from further liability as surety upon the bond which it executed. Upon such a state of facts the defendant was held liable for premiums for failure to furnish any evidence to plaintiffs of its discharge from liability. The plaintiffs also urge that defendant has made no demand in writing upon them for return of any compensation that has been paid for the unexpired portion of such suretyship as required by the concluding sentence of section 812 of the Code. This provision implies that the surety is only entitled to premiums until the entry of the order relieving him from further liability, and was designed to compel the principal to make written demand upon the surety before he might maintain an action for recovery of the unearned part of the premium. But in the case under review no premium has ever been paid by the defendant, and hence no question of demand for return premium can

arise. It is only necessary to consider to what extent the plaintiffs may recover for premiums earned.

It follows from the foregoing facts that plaintiffs are entitled to the proportionate share of the premium payable on each bond for the first year from June 24, 1910, the date of its execution, up to March 14, 1911, when they were relieved from all further liability thereunder, together with interest thereon from June 24, 1910. Submit findings in accordance with the foregoing views.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and SMITH, JJ.

H. Mansfield, of New York City, for appellants.
C. A. Winter, of New York City, for respondent.

PER CURIAM. Judgment affirmed, without costs, on opinion of Greenbaum, J. Order filed.

---

(92 Misc. Rep. 388)

### PEOPLE ex rel. SHANNON v. GARSTENFELD.

#### (Kings County Court. November, 1915.)

DISORDERLY CONDUCT ☞1—OFFENSE—WHAT CONSTITUTES.

Where defendant publicly greeted another by placing the end of his thumb against the tip of his nose, at the same time extending and wiggling the fingers of his hand, and it appeared that he had committed the same offense toward the complaining witness on previous occasions, thus indicating a determination to annoy him to the limit of patient endurance, his conviction of disorderly conduct was authorized.

[Ed. Note.—For other cases, see Disorderly Conduct, Cent. Dig. §§ 1-8; Dec. Dig. ☞1.]

Appeal from Magistrate's Court.

Proceeding by the People, on the relation of John Shannon, against Morris Garstenfeld. Judgment of conviction, and defendant appeals. Affirmed.

Berlin & Klein, of Brooklyn, for appellant.

James C. Cropsey, Dist. Atty., of Brooklyn (Ralph E. Hemstreet and Harry G. Anderson, both of Brooklyn, on the brief), for respondent.

ROY, J. Is it disorderly conduct for one individual to publicly greet another by placing the end of his thumb against the tip of his nose, at the same time extending and wiggling the fingers of his hand? That momentous question is involved in this appeal. What meaning is intended to be conveyed by the above-described pantomine? Is it a friendly or an unfriendly action; a compliment or an insult? Is it a direct invitation to fight, or is it likely to provoke a fight?

Dr. Holmes, that delightful wit and philosopher of a former generation, remarked in his "Autocrat of the Breakfast Table" that "there are a good many symbols even that are more expressive than words." In the Knickerbocker History of New York we read that, when William the Testy sent an expedition to treat with the belligerent powers of Rensselaerstein, the ambassador who accompanied the expedition demanded the surrender of the fortress. "In reply the wachtmeester

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes